Good afternoon. Illinois Appellate Court, First District Court is now in session. The First Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-7-3008, People v. Amin Smith. Good afternoon, everyone. I'm Justice Walker, and I have here with me Justice Hyman and Justice Coghlan, and I'm going to now ask the lawyers if you could please introduce yourselves for the Mike Gentithis on behalf of the Appellant Amin Smith. Good morning, or afternoon, I should say. Thank you, Mr. Gentithis. And Mr. Slavens? Morning, Your Honors. Zachary Slavens on behalf of the people of the state of Illinois. Okay, thank you, Mr. Slavens. And Mr. Gentithis, approximately how much time do you need today? I would guess 10 minutes. 10 minutes, okay. And how much time for rebuttal? If I could reserve two minutes in rebuttal, please. Sure, you can reserve two minutes for rebuttal. All right. And Mr. Slavens, how much time do you need today? I don't anticipate having to use any more than 10 minutes either. 10 minutes? Okay, sure. All right. Okay, so Mr. Gentithis, you can go ahead and get us started. Thank you, Your Honor. On March 22nd, 2015, it was Deshante Hassel, not Amin Smith, who brought a gun out to dinner with friends. It was Hassel, not Smith, who initiated a robbery in an alley. And it was Hassel, not Smith, who began a mutual combat that seriously provoked Smith and led to the tragic death that night. Now, the evidence showed all of that, despite the prosecutor's improper suggestion that somehow Hassel couldn't have started this mutual combat unless he severely injured his hands. Perhaps the jury convicted because a biased member was- Counsel, does it really matter who started the fight? Isn't the bigger issue Mr. Hall's testimony that your client is standing over the victim from at least three feet away and shoots him with the gun? This was an ongoing mutual combat. There was no time to cool down after that combat began. From the perspective of Smith, this is an ongoing fight. He's been robbed or attempted to be robbed in the alley. At that point, he doesn't have the opportunity to reflect on the circumstances. So you're not disputing Hall's testimony, you just think it doesn't matter? I don't dispute Hall's testimony that at the time of the shooting, Smith was at least two to three feet away. Holding a gun, holding a gun at an unarmed man. Holding the gun that he had wrested control of from Deshante Hassel. Hassel's the one who brought the gun to that alley. Hassel's the one who attempted a robbery of Smith. And we also know that there was no period during which he could have cooled down. This is akin to the textbook example of second-degree murder where a jilted lover walks in on their partner, seemingly cheating, and perhaps draws a gun and fires. There wasn't an... Sorry, Justice Coghlan, I thought I saw you ask a question. There wasn't an opportunity for him to cool down at that stage. It's a natural human reaction in that situation to continue to act. It's an... What about the fact that he's kneeling saying please? Hassel's saying please because he knows this is an ongoing combat. He understands that this is a continuing struggle. How do you know what he understands? There's no evidence of that. Because Hassel wouldn't have initiated this combat. I'm sorry, Smith would not have participated in this combat if Hassel has not initiated it. This is someone who he's known most of his life, a good friend of his. It's not somebody that he is planning to do anything with. The stop, remember, is not initiated by Smith. It's initiated by Hall, who simply has to urinate on the way out to dinner with friends. We also know from the state's own witnesses that this was a mutual struggle. Several of the state's witnesses heard that ongoing combat in the alley. There are clothing, there are cell phones strewn about in that alley. We know that this is mutual combat based upon those factual details. And the prosecutor's efforts to improperly prejudice the jury demonstrates that their efforts were also to take advantage of the jury's inherent trust in them. The prosecutor claims, without any expert testimony and support whatsoever, that Hassel must have injured his hands severely if he was engaged in mutual combat and struck Smith more than one time. There wasn't a single shred of expert testimony that suggested that kind of... Well, what about the pathologist saying that he has no injuries? The pathologist was asked a single question. Did you notice any other injuries? The pathologist testified, counsel, that the victim had no injuries other than his facial injuries. That's the testimony. The testimony was in response to one question of whether there were any other injuries. Well, why does that matter? It wasn't a specific question to injuries on the hands. What do you rely on in making the argument that you need a specific question? Because the testimony that that pathologist gave in response does not allow the conclusion that someone must severely injure their hands, must strike bones. Well, that's a different issue. But my question to you is, the pathologist can certainly testify to what he observed, can't he? Of course. But the pathologist's testimony does not establish beyond... It doesn't establish an expert basis for the prosecutor to claim, Hassell couldn't have started this fight because he didn't injure his hands severely enough. There's no basis for that conclusion. We don't have a common experience or something that we can rely upon to say, hey, whenever there's a fistfight, someone who's involved is always going to have their hands severely injured, is always going to strike bone if they're punching someone more than once. And again, remember, the only explanation for this combat comes from Smith's testimony that suggests a friend he's known for many years decided that he was going to try to get money that Smith had brought to buy his friend dinner. This is not a situation where Smith is in any way planning an attack or forwarding that opportunity. And the prosecutor relies on the hey, we all know something that really no expert has supported. And the prosecutor doesn't... You make a lot of excellent points, but I keep harkening back to what really troubles me. And that's the fact that this mutual combat fight, whatever you want to call it, has stopped. The defendant is at least three feet, and the evidence suggests may have been significantly further than that, away from the victim. The victim is saying please, and the defendant shoots him anyway. I have a problem with that. That doesn't indicate that this combat has stopped. Simply because there was a struggle over the gun and Smith was able to wrest control does not suggest the combat is over. Smith's blood is still boiling. What suggests that it isn't over? Because this is so fast in time. His adrenaline is still rushing. That's exactly what the second degree murder statute is designed to address. And what is your authority that you're relying on making that argument? The second degree murder statute itself. It's designed to respond where someone's blood is boiling in the heat of the moment, in those serious provocations, such as this one, where Smith's being attacked, he's able to wrest control of a gun from someone who brought a gun to a fistfight, and then responds in a way that we might expect a human to respond. The second degree murder statute partially excuses that kind of conduct. And that's a response, again, that we can expect when someone is attacked by an armed decedent. That's the whole point. The decedent was no longer armed. Your client was armed. Now, we know that Hassel is a gun enthusiast. The state's own witnesses, Hassel's former roommate, suggests that he loves guns. He's used this gun, in fact, in prior days in a music video. So we can at least consider him a dangerous person throughout this struggle, even after the gun is wrestled away from him. And Hassel, or rather, Smith's completely understandable, or at least partially excused under the second degree murder statute response, should be reduced to a second degree murder conviction. Are you saying that the fact that he wrestled this gun away, was there any evidence to show that he might have had another gun? And that is, your client was worried that because of the gun enthusiast, there might have been another gun involved. Is there any evidence of that, or any arguments of that sort? Now, Smith knows Hassel, and there is the state's witness testimony that Hassel's roommate knows he is frequently armed. There's nothing direct in the evidence that suggests that they discussed how many guns Hassel might have been carrying that night, but they did discuss the fact that Hassel was armed. We have that again from one of the state's witnesses, Ruby Lockhart. So this response certainly makes sense under those facts, where we know this person pretty well. It's a known gun enthusiast, and the struggle, again, is ongoing. If you can't allow a defendant to respond in this way, then you never allow second degree murder, where the decedent is the one who brings the gun to a fistfight, and that simply isn't the way the second degree murder statute is designed to operate. Now, perhaps the jury convicted here because a biased member was seated after defense counsel exercised discretion in the jury selection process on the basis of race. That kind of racially basis... It wasn't just strategic. He even testified. The lawyer testified. It was strategic in that he thought she would be good for Smith. I mean, she was a woman, and he did say because she was Black, but still, that was strategic, wasn't it? Two points, Your Honor. First, this is not a matter of trial strategy that's within the permissible realm of counsel. The use of racial discrimination in jury selection, in the discretion of jury selection, is always impermissible, whether that comes from the state or comes from defense counsel. And secondly, the fact that this was an assumption about what kind of lived experience this particular juror might bring to that jury room is exactly the kind of racial discrimination that we want to keep out of our jury selection process, of our trial process. Lawyers rely on that all the time. That is... How else do lawyers make decisions on individuals? Take away the race, that she's a woman, and she had a strategy. He's thinking with the romantic point of view that she would have some feelings. That's how lawyers have for centuries, really, when it comes to the jury. It's a gut feeling. You don't know the people. How else are you going to do it? I don't understand your argument. Because it was expressly premised upon race. Again, if defense counsel had made... Race was. That was one reason. But he thought she would understand. A woman might be better than a man in that situation, didn't she? That's not what the attorney's testimony in the Crankle hearing is. It's because she is an African-American woman, and so is Ruby Lockhart, because they will understand each other as African-American partners, that they have some shared background, some shared experience. And those kind of assumptions are exactly what we need to keep out of the jury selection process. And let's just say that those assumptions are not necessarily true, just because two people are African-American does not mean that they have similar backgrounds or that they think about things the same way. But what I want you to really do is to move on to your second argument. Your second argument is concerning the prosecutor's comments during closing. So can you please go ahead and focus on that? Absolutely. And the two ways. First, by suggesting that Hassel could not have initiated this fight if he didn't have more severe injuries on his hands. And second, by suggesting that the shell casing can indicate how far away Hassel and Smith were when the gun was fired. There was absolutely no ballistics expert called at trial. There was nobody to testify and suggest how that shell casing would have discharged from this particular gun. And depending upon the angle where it might have anything. Yet again, the prosecutor relied upon that inherent trust that jurors have in the state and their authority to posit expert testimony in closing both in opening. Let's just move past that because the state is arguing that that argument is totally waived and that this court has no authority to review that argument. So let's move to that next stage. Well, this would fit under the closely balanced prong of plain error. As we've discussed, the evidence actually supports reducing this conviction to second degree murder. The evidence shows that Deshante Hassel is the one who brought a gun and initiated this mutual combat, not Smith. And for that reason, the first prong of plain error applies here. Court can address clear prosecutorial misconduct. How is the evidence closely balanced? Because as I've mentioned, it was Hassel, not Smith, who brought the gun to an alley, who brought a gun to a fistfight. We have reason to think that Hassel is the one who initiated this combat. Smith's testimony suggests as much. Several eyewitnesses called by the state hear a mutual scuffle in the alley, including Hall as well. We know that Smith and Hassel discussed whether or not he was armed in the car earlier that night. There are all of these facts. Okay, your counsel, you are limiting your response to us to the defendant's testimony. We're all aware of what that testimony is. I think what we're interested in knowing is why you believe this is closely balanced. Because the evidence. The defendant's testimony. We can look at evidence outside of taking Smith's word for it. We have an unplanned stop initiated by Hall. We have both Hall and Lockhart saying that when Smith gets back into the car, his hands and face are bloody, suggesting that he's been struck, that there have been mutual blows exchanged in this alley. And again, all the parties are out to eat together. They're having dinner. They are friends. There isn't the kind of animus between that Smith would have with Hassel that would suggest he would in some way have have an agenda. He was responding. What about the fact that Hall testifies again, not to keep repeating myself, that by the time the victim is shot, the defendant is standing at least three feet away, pointing a gun at him, he's saying please. Again, that indicates an ongoing mutual combat that Hassel is fully aware. What about the pathologist's evidence that the victim had no injuries other than the facial injuries? The pathologist's testimony does not give the state grounds to argue that Hassel must have struck bone, that he must have repeatedly. My question is, what about his testimony? I'm not talking about the state's argument. I'm talking about the evidence that the victim had no injuries anywhere on his body except his face. Well, that works both ways. There's no testimony as to defensive injuries either that we might expect if this was an attack. I'm asking you about the closely balanced argument. How can we balance when there's other evidence? There's no other evidence that explains what occurred in the alley aside from mutual combat. The only evidence that the state introduced also supports that theory because again, you have several other eyewitnesses who hear the mutual scuffle. We have two eyewitnesses who see that Smith's face is bloody. In addition, we have the clothes, cell phones strewn about in that alley. All of this suggests a mutual combat that's still ongoing and the fact that Smith has wrested control of that gun from Hassel cannot itself end this mutual combat. What about the defendant's conduct after the shooting? The defendant's conduct after the shooting indicates fear. Nothing more than that. What's he afraid of at that point? He's just killed the aggressor. Right, and this is a close friend of his who he's known since childhood. Wouldn't you agree that his conduct arguably suggests consciousness of guilt? Not necessarily guilt of first-degree murder, Your Honor. The defendant's response suggests obviously feeling terrible about losing a close friend. That's not something that we can take lightly. His response, both in the moment and thereafter, is the kind of human emotional response that is in part excused by the second-degree murder statute. And for those reasons... Throwing the gun and the rag into Lake Michigan? Again, the defendant is distraught at losing a friend. His reactions are not what we would want, but they are not completely misunderstandable or completely out of the realm of human response. That's in part what the second-degree murder statute is designed to address, and that's what it should address here. And for those reasons, we ask that this court reduce the conviction to second-degree murder or remand for a new trial. Thank you, Your Honors. And can I just clarify one thing? You are relying completely on the mutual combat argument? Yes, Your Honor. We've raised the mutual combat theory of second-degree murder on appeal. Thank you, Mr. Dentifus. And Mr. Slavins, you're up. Good afternoon. May it please the court. My name is Zachary Slavins, and I represent the people of the state of Illinois. Defendant was properly convicted of first-degree murder in this case, and this court should affirm that conviction because the evidence demonstrated first that the defendant and victim were not engaged in mutual combat as defined by the second-degree murder statute. The prosecutor correctly argued the evidence during closing argument, and defense counsel was not ineffective simply because his trial strategy proved unsuccessful. Turning to the first point, taking the evidence in the light most favorable to the people, a reasonable fact finder could conclude that this was not a voluntary fight on equal terms. Okay, counsel, the state's attorney argued where it's more than just one punch, you know you're bleeding. You can, I can't read my own writing, sorry. You can't, oh, you get cut because you're hitting bone. There's no evidence of that. Yes, Your Honor, I believe that goes to the second issue with respect to the closing argument, and this is an argument for a reasonable inference to be drawn from the undisputed expert medical testimony. Where's the undisputed medical testimony with regard to hands? There was nothing asked of the examiner but one question, right? Is that right? There was only one question that covered the scope of other injuries to the defendant. Right, right, so we don't know anything with regard to what might happen when one hand hits a face, whether there would be any injury as you know as it is that the state's attorney argued. He's testifying as if he's the medical examiner, isn't he? No, he's not. No, he's not, Your Honor. Well, I know that's your argument, but I'm trying to find out where he gets this based upon that one statement by the medical examiner. Well, Your Honor, it goes to the telly. This was an expert. This is expert testimony. He is giving an expert testimony. Otherwise, where else? Okay, if it's someplace else, tell me. Where else do we have testimony like this? Well, Your Honor, we have Dr. Eason's medical testimony. Counsel, this is not a situation where the state's attorney is arguing, wouldn't you expect blah, blah, blah? This is a situation where the state's attorney is arguing, and I'll grant you it's only one sentence, but she is arguing in that one sentence where it's more than just one punch. You know that there's no evidence of that. This is not a reasonable inference. This is not something wouldn't you expect or isn't it unusual that there wasn't? This is her arguing something as if it was admitted into evidence, and there was expert testimony on that one point, and there wasn't. We would respectfully disagree with that, Your Honor. As your reciting of the quote goes, she is perhaps not using the precise language you are. Exactly. But she is still making an appeal to the common experience, and this is a reasonable inference to be drawn from all of the testimony you have. But she didn't argue it that way. She argued it as if it were fact, as if the expert, the pathologist, had testified to that fact, and he didn't. So how do you respond? I guess, how do you respond to the fact that assuming I'm correct or assuming that that argument is made in the context of the closing arguments, how do you respond to that? I'm sorry. Can you clarify your question, Your Honor? It's one sentence. So what is your response to the argument that that sentence was inappropriate? Is that enough? Is that enough to... Well, Your Honor, we would argue that... To conclude that the whole argument was inappropriate? Well, no, Your Honor. We would say even if that one individual sentence may have been inappropriate, which we strongly disagree with, that one individual sentence is not getting defendant across the line for reversal. Because again, this is a forfeited error. This is reviewed under the plain error doctrine, and there still must be prejudice to obtain a reversal. And defendant cannot meet that burden under either prong of the plain error analysis. With respect to the closely balanced analysis, defendant's argument is critically flawed in that it tries to constrain this look at simply the question of intent. But the case law really all looks at the totality of the evidence, not just simply one element of the offense. And here, we have Dr. Eason's medical testimony about the injuries defendant sustained, the nature of those injuries, the lack of any injuries to his hands, which the prosecutor's argument aside, the testimony is there were not injuries to his hands, which directly contradicts defendant's testimony that he was punched in the face 10 to 15 times. You have what the people would argue is perhaps the most critical evidence here is Mr. Hall's testimony about the fight that he observed, where he saw these people on the ground wrestling, and critically what he did not see, which is a fight like what defendant described. Defendant said he was punched in the face 10 to 15 times by the victim. Mr. Hall testified he did not observe victim throw any punches. But the victim, excuse me, but Mr. Smith had blood on him, right, on his face? The evidence shows that there was blood on his hands and some, that he's bleeding from cuts on his hands. That's what Mr. Hall- There were cuts on his hands. I mean, it seems to me that there was some connection between, there was a hand-to-hand combat. Otherwise you wouldn't have those, would he? Of course there was some kind of conflict in the alleyway. Hand-to-hand combat. Yes, Your Honor. There's certainly evidence that a conflict occurred in the alleyway. That's not disputed. Hand-to-hand combat. What is the response to hand-to-hand combat? Yes, Your Honor. If that's the phrase you would like to use, yes, there's certainly evidence that there was a fight, a conflict, a wrestling match. However, it was a fight, okay, and a fight with clothes. Yes. And the prosecutors say that, you know, anyone who's ever punched someone, the question to fight knows where it's more than just one punch, you know, you're bleeding. How do you know that somebody's hands are bleeding? I mean, you don't have to be in a fight when there's several bullets bleeding, do you? Where's that coming from? Isn't that an opinion that an expert should testify? Your Honor, that is an argument urging the jury to draw a reasonable inference from the common experience and the expert medical testimony we have here that the victim did not have any cuts or injuries. Well, luckily most people don't get into fist fights. I was going to ask, too, how common is that experience? Yeah, it's not a common experience. I've never in my life had one since I was an adult anyway, so it's not a common experience. Have you had, I mean, you know, all of us here, I mean, who has a hand-to-hand combat as an adult? That could be a criminal offense. Perhaps, Your Honor, but the question of whether or not that statement was an error is separate also from the testimony. I'm sorry, Your Honor. It could be prejudicial considering if we believe that the evidence is close. Yes, Your Honor, if the court were to find that that was an error and the evidence was closely balanced, that would be reversible, but the people's position is that the evidence was not closely balanced. To find the evidence was closely balanced would require giving credit to and physical evidence at several points. He testifies that he was punched in the face 10 to 15 times by the victim. There are no injuries to the victim's hands. He testifies that he grabbed the gun. Wait a minute, there's no injury to the victim's hand. Where's the testimony that her hand, when you say bone on bone, where's the testimony that that would be the situation, that you would have injuries to somebody's hand? That requires an expert. You say, oh, that's everybody's knowledge, and as we just discussed, most people don't have that now, so that would require an expert, wouldn't it? Your Honor, I'm speaking to the prejudice element, not the statements made during closing argument, and taking simply the expert medical testimony here as to whether or not this is closely balanced, the expert testimony rebutts defendant's Hall's eyewitness testimony, rebutts defendant's narrative. So what I hear you saying is if we don't accept the closely balanced, you lose. Well, Your Honor, if under the plain error analysis, if the court were to find that the comments were improper and the evidence was not closely balanced, that would satisfy the burden for reversal. Our position is obviously that there was not reversible error, nor was the evidence closely balanced, and the prosecutor's closing argument aside, looking simply at the evidence as required for the first prong closely balanced analysis, you have defendant's narrative that is implausible, rebutted by the physical evidence, rebutted by the eyewitness testimony, and that is simply not getting defendant to the level where this one stray comment was so grievous that it threatened to tip the balance against him. Mr. Slavens, how do you respond to the same question that I asked Mr. Gentithis, which is assuming there is a fight, and I don't think anybody can reasonably dispute that there's a fistfight and punches are getting thrown. But separate and apart from that, the gun is rested away from the victim. There is at least three feet between the victim and, at least the victim's shot, and there's evidence that the defendant is standing and the victim is on the ground saying, please. And counsel's arguing that none of that matters if there's mutual combat. How do you respond to that? Your Honor, we would strongly disagree with defendant's position on that, and that returns back to the first point here. And the fact that defendant has prevailed in the fight, he has obtained control of the gun, and has managed to pull range, stand up, and stand over an individual who is lying on the ground struggling to get to his hands and knees, literally saying, please. At that point, the fight is over. Regardless of how it started, whatever might have been occurring, the fight was over at that point. And the decision to shoot the victim at that point, if nothing else, was a response that was entirely out of proportion to the provocation, which is one of the ways in which second-degree murder will not apply. Even though the law recognizes that an individual may have their passions inflamed by a sudden conflict, second-degree murder does not excuse conduct that is entirely out of proportion to the provocation. And we would argue that these facts, which defendant does not really dispute, all show that this was not second-degree murder. And to briefly touch on Justice Hyman's question to opposing counsel, your honor asked if there's any evidence that defendant thought the victim may have had a second gun. Even though there was some testimony that the victim was a gun enthusiast, there was absolutely no evidence, no suggestion, nothing at all to presume that the victim had a really raised here on appeal. What's the significance of this iPad evidence and argument? Your honor, opposing counsel appears to use the evidence that some things fell out of everyone's pockets during the fight to suggest that this fight was mutual. But again, that's simply evidence that there was a fight, not as to the nature of the fight. No, no, I'm talking about the fact that the defendant and the victim had some prior or something having to do with an iPod. Yes, your honor. I'm sorry, I was confused by your question. Yeah, I recall that there was some evidence about an iPod. I think the testimony was that the victim or defendant may have sold each other's iPod at one point. I thought maybe I was missing some great significance, but it appears not. So thank you, your honor. We would not take the position that that testimony is particularly relevant to the question. Thank you. You've answered my question to return then to the mutual combat aspect. Again, second degree murder for mutual combat requires that this would be a fight on equal terms. And based on what Mr. Hall viewed, this was not a fight on equal terms. Mr. Hall viewed defendant overpower the victim, get control of the gun. And he did not see the victim throwing punches. The expert medical testimony and closing argument statements aside, but the eyewitness to the fight, the only person who actually did not see a fight on equal terms. He saw a defendant overpower the victim, obtain the gun, while the victim is simply grappling and struggling to stay alive. That is not a mutual fight. That is not mutual combat. Turning then, and again, this is a review on reasonable doubt, and that requires taking all the evidence, all reasonable inferences in the light, most favorable to the people throughout defendants argument. It constantly relies and ask this court to draw inferences in defendant's favor to credit defendants testimony over other eyewitnesses who gave contrary testimony. And that's not the standard to be applied on appeal properly viewing the evidence in the light, most favorable to the people there. This was not mutual combat. This response was out of proportion and this conviction should be affirmed. To briefly touch on the IAC argument, the people would argue that counsel provided reasonable representation here. He had a specific basis for why he selected the juror. And that is a reasonable exercise of trial strategy. And it was reasonable for trial counsel to preserve additional strikes for later panels during jury selection. Ms. Townsend was seated on the first panel. And regardless of the wisdom of his trial strategy, there still was no prejudice here because we don't get to prejudice from the seating of Ms. Townsend unless she was biased and she was very clearly rehabilitated by defense counsel on the record. What about the fact that she cried and had to be helped apparently by some of the prospective jurors, which is not evident in some cases that we say. Well, your honor, there's no evidence that that sort of outburst didn't occur in the other cases, but the people's position is that she was rehabilitated. She may have gotten emotional, but when asked, she didn't say I'm too emotional to remain impartial. She said, it's a difficult situation and unusual situation. She's probably never been before. Perhaps, but if she were truly so impacted by that experience, she would have testified, I can't remain impartial. I'm too emotionally worked up to give this person a fair trial. That's not what she said. She said, I can put that aside. I will not hold this against the defendant. And given those responses, given the totality of her voir dire, it would be reasonable to seat her and conclude that she was not biased and that there's no prejudice resulting. And if there are no further questions, the people would respectfully ask this court affirm defendant's conviction for first degree murder. Thank you. Thank you, Mr. Slavens. Mr. Jim Titus. Just two brief points in rebuttal. First, some clarifications. The quotes that Justice Coughlin cited from the prosecutor came in rebuttal closing argument at a point when not only was it impossible for defense counsel to call a rebuttal expert to refute those injections of expert opinion, but at a point when he could not respond in argument at all whatsoever. And this is after in the initial closing argument, the prosecutor offers a similar claim that we know that this person must have had injuries to their hands if there was in fact a mutual fight. This is secondly a close case. As Justice Hyman pointed out, there is testimony from two witnesses called by the state that Smith himself is bleeding from his face, that he was engaged in that kind of mutual combat. The suggestion that the only evidence of mutual combat comes from Smith's testimony misreads the record entirely. And for those reasons, we ask that this court reduce Smith's conviction to second degree murder or remand for a new trial. Mr. Jim Titus, thank you both for your excellence. We appreciate your briefs and your argument. And the hearing is adjourned.